UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SUZETTE McCLURE,<br><br>      Petitioner,<br><br>      v.<br><br>MOLLY HILL,<br><br>      Respondent. | No. SA CV 17-01956-R (DFM)<br><br>ORDER OF DISMISSAL |

On November 3, 2017, Suzette McClure ("Petitioner") initiated this action by filing a Petition for Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254. See Dkt. 1 ("Petition"). Respondent moved to dismiss the Petition, arguing that the Court lacks jurisdiction over the Petition. See Dkt. 7 ("Motion to Dismiss"). For the reasons discussed below, the Court agrees and dismisses the Petition.

**I.**

**BACKGROUND**

Petitioner is incarcerated at the California Institution for Women, serving a 19-years-to-life sentence after pleading guilty to second degree murder with a gun enhancement. See Petition at 2. Petitioner asks the Court to "vacate" a California Department of Corrections and Rehabilitation

("CDCR") prison disciplinary conviction resulting from a Rules Violation Report ("RVR") for "failure to obey a lawful order." Id. at 9.

According to Plaintiff's description of the RVR, on February 13, 2015, Correctional Officer Banuelos found Plaintiff going through the officer's personal belongings, after Plaintiff had asked to use the restroom before going to a job site. See id. at 10-11. Correctional Officer Tate was assigned the duties of Investigative Employee, and Petitioner told Tate that she wanted Banuelos and "other witnesses" present at the hearing. Id. at 11. The hearing took place on March 17, 2015. See id. Petitioner pleaded not guilty and testified that she was "just getting gloves." Id.

As a result of the RVR, Petitioner was assessed a forfeiture of credits of 30 days. See id. at 10. Petitioner filed prison grievances and habeas petitions with state courts, all of which were denied. See id.

## II.
## DISCUSSION

Petitioner argues that her constitutional right to due process was violated in four ways: (1) Banuelos was not present at the hearing; (2) prison authorities failed to document why Banuelos was not present; (3) during the administrative appeals process, the CDCR failed to address these two grounds for appeal; and (4) insufficient evidence supports the conviction, because Petitioner never violated any instruction. See id. at 15-17. Petitioner argues that these constitutional violations will affect her eligibility for parole and resulted in denial of parole in 2017. Id. at 12; see also Dkt. 11 (Petitioner's opposition to Motion to Dismiss) at 4.

Petitioner's claims are not cognizable under 28 U.S.C. § 2254(a). "[I]f a state prisoner's claim does not lie at 'the core of habeas corpus,' it may not be brought in habeas corpus but must be brought, 'if at all,' under [42 U.S.C.] § 1983." Nettles v. Grounds, 830 F.3d 922, 934 (9th Cir. 2016) (en banc)

(citation omitted). A prisoner's claims fall within "the core of habeas corpus" when they challenge the fact or duration of the conviction or sentence. Id. When a prisoner's claim would not necessarily spell speedier release, that claim does not lie at the core of habeas corpus." Skinner v. Switzer, 562 U.S. 521, 535 n.13 (2011); Nettles, 830 F.3d at 934-35.

In the context of disciplinary proceedings, if reversal of a disciplinary finding would not "necessarily" speed up a prisoner's release, the prisoner may not seek relief by habeas petition. Nettles, 830 F.3d at 934-35. The mere fact that a disciplinary decision may be considered in denying parole is insufficient to confer habeas jurisdiction. See id. (finding petitioner's claim not within "core of habeas corpus" where expungement of petitioner's rule violation would not "necessarily" result in earlier release because parole board could still find him unsuitable for parole based on other factors under California law). Inmates, such as Petitioner, who are serving indeterminate life sentences with the possibility of parole may be released from prison upon the parole authority's determination that they are suitable for parole. See Cal. Penal Code § 3041(b); In re Lawrence, 44 Cal. 4th 1181, 1202-03 (2008). The parole authority's assessment of a prisoner's suitability for parole rests on its consideration of a number of factors that are probative of the inmate's current risk to public safety. See Lawrence, 44 Cal. 4th at 1202. While a prisoner's disciplinary record is a relevant factor for his parole suitability, the reversal of a disciplinary conviction will not necessarily result in parole release or otherwise expedite his release from prison. See Nettles, 830 F.3d at 934-35; see also Ramirez, 334 F.3d at 859 (successful challenge to prison disciplinary proceeding will not necessarily shorten length of confinement where parole board could deny parole for other reasons). Credits earned by an inmate serving an indeterminate life sentence with the possibility of parole go towards advancing only the inmate's minimum eligible parole date ("MEPD"), i.e., the

earliest date on which he could legally be released on parole, see Nettles, 830 F.3d at 925, not his actual release date from prison. See In re Jenkins, 50 Cal. 4th 1167, 1179-80 (2010).

As noted above, Petitioner is serving an indeterminate sentence of life with the possibility of parole. Petitioner reached her MEPD on June 16, 2012. See Dkt. 8 at 4. The 30-day credit loss at issue was imposed years later, in 2015. Thus, the punishment that resulted from the allegedly unconstitutional disciplinary proceeding did not even affect Petitioner's MEPD.[1] And because the parole board considers many factors—not only an inmate's disciplinary record—before making a parole suitability determination, see Cal. Code Regs. tit. 15, § 2281(b), the presence of a disciplinary infraction on Petitioner's record "does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole." Nettles, 830 F.3d at 935; see also Olic v. Lizarraga, No. 16-0689, 2017 WL 2664147, at *3 (C.D. Cal. Mar. 27, 2017) (reasoning that successful challenge to disciplinary violation and restoration of credits would not necessarily lead to speedier release because disciplinary record only one factor in parole suitability decision); El-Shaddai-Wilkerson v. Soto, No. 15-6584, 2016 WL 4975213, at *3 (C.D. Cal. Aug. 18, 2016) ("The 150-day credit loss . . . that resulted from the allegedly unconstitutional

---

[1] Even if the MEPD had not passed, the Court would not have jurisdiction. See Pettis v. Asuncion, No. 16-4241, 2017 WL 927626, at *5 (C.D. Cal. Jan. 26, 2017), report and recommendation adopted, 2017 WL 923895 (C.D. Cal. Mar. 8, 2017) ("Here, unlike in Nettles, petitioner's MEPD date has not passed, and petitioner has not had his initial parole board hearing. Nonetheless, Nettles is instructive. If petitioner were to have the 61–day credit loss restored and the disciplinary action expunged from his record, it might lead to an earlier MEPD and initial parole board hearing, but it would not necessarily lead to an earlier release from confinement. . . . Other district courts have found that the potential for an earlier MEPD is not sufficient to confer habeas jurisdiction.").

4

disciplinary proceeding at issue has no bearing upon the fact or duration of petitioner's confinement because his term of life in prison was not extended and his minimum term of imprisonment was not shortened by the loss of time credits.").[2]

While the Court may, in some instances, convert a habeas corpus petition into a civil rights claim, see Nettles, 830 F.3d at 936, conversion is not warranted here. Prisoner civil rights actions are subject to different requirements than federal habeas proceedings. The filing fee for civil rights actions is $350 rather than the $5 habeas filing fee. See 28 U.S.C. § 1914(a). Further, should Petitioner seek to bring a civil rights action in forma pauperis ("IFP"), she must file the appropriate documentation to qualify for IFP status and would be financially responsible for paying the full $350 filing fee from her prison trust account. See 28 U.S.C. § 1915(b)(1). It is not in the interest of judicial economy to convert the Petition into a federal civil rights complaint because the case would, at a minimum, require additional court resources to deal with the problems created by the different filing fees, the absence of information called for by the civil rights complaint form utilized in this district (e.g., whether those sued are sued in an individual or official capacity), and the

---

[2] Petitioner argues that the disciplinary infraction resulted in denial of parole in 2017. See Dkt. 11 at 4-6. Petitioner attaches five pages from the California Board of Parole Hearings' decision. See Dkt. 12. These pages, in fact, show that many factors were considered in denying Petitioner's parole, exactly as contemplated in Nettles. See id. at 2 (noting that the board looked at comprehensive risk assessments back to 2010, "all the initial documents and the . . . 10-day file, as well as . . . other documents"), 3 (noting Petitioner's "past, present mental state and attitude towards the crime"), 3-4 (noting that Petitioner refused to participate in comprehensive risk assessment). Respondent provides the full 155-page transcript, which reflects that a good number of factors other than the 2015 discipline led to denial of parole. See Dkt. 14-1.

potential service issues relative to individuals whose conduct is alleged to have deprived petitioner of her constitutional rights. Accordingly, the Court declines to convert the instant action into a federal civil rights action without prejudice to Petitioner filing a separate federal civil rights action.

## III.
## ORDER

IT IS THEREFORE ORDERED that the Motion to Dismiss is GRANTED and this action is dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 13, 2018

_____
MANUEL L. REAL
United States District Judge

Presented by:

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge